(C. D. 592)

L. H. BUTCHER CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided February 5, 1942)

*Harper & Harper* (*Abraham Gottfried* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*James F. Donnelly*, special attorney), for the defendant.

Before Oliver, Walker, and Tilson, Judges

Tilson, Judge: This suit against the United States was brought to recover certain customs duties alleged to have been illegally exacted upon an importation of merchandise invoiced as Belgium arsenite powder. The collector classified the merchandise as chemical salts, not specially provided for, and assessed duty thereon at the rate of 25 per centum ad valorem under paragraph 5 of the act of 1930, which paragraph is as follows:

All chemical elements, all chemical salts and compounds, all medicinal preparations, and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for, 25 per centum ad valorem.

The plaintiff claims the merchandise to be free of duty under paragraph 1614 of the same act, which provides for "Arsenious acid or white arsenic."

At the trial of the case counsel for the respective parties agreed and stipulated that the merchandise in question consists of "sodium arsenite." Counsel for the plaintiff then stated his position or contention as follows:

\* \* \* We contend that although sodium arsenite is a salt, and consequently was produced by subjecting an acid to a particular chemical reaction, and would not technically or scientifically fall under the designation of arsenious acid nevertheless under the common meaning as represented by Webster's New International Dictionary, published in the year 1930, when the Tariff Act of 1930 was formulated, our particular product falls within the free provision of paragraph 1614.

\* \* \* \* \* \* \*

And then it specifically refers to arsenious acid, and it says, "Properly, an acid, $H_3AsO_3$—

\* \* \* \* \* \* \*

"known only in the form of its salts and arsenites."

\* \* \* \* \* \* \*

Now it is our contention that if arsenious acid is known only in the form of its salts therefore when Congress had a provision for arsenious acid it referred to an article which was in existence, and if such article was a salt of arsenious acid, namely, an arsenite, Congress meant to include an arsenite.

\* \* \* \* \* \* \*

Therefore, our contention is this, that Congress provided for two substances, for white arsenic, arsenious oxide, and also for the salts of arsenious acid when it provided for arsenious acid; sodium arsenite being a salt is properly dutiable under the provision for arsenious acid.

Counsel for the plaintiff contented himself with the statement of his contentions and offered no evidence of any kind in support of the same. In his brief filed herein, counsel for the plaintiff contends that sodium arsenite is properly included within the terms "arsenious acid or white arsenic." He then argues that it is axiomatic in customs interpretation that Congress legislates in the light of the commercial

meaning or in the absence of which the common understanding of a particular term or phrase, and that there has been no showing of a commercial meaning different from the common meaning.

In support of the above contentions counsel for the plaintiff cites and apparently relies upon the following definition of the terms, as found in Webster's New International Dictionary, 1930:

— *ite.* \* \* \* 2. In various technical terms used to name: \* \* \* b· Chem. (1) a *salt* formed *from* an *acid* whose name ends in — *ous* \* \* \*

*arsenite. Chem.* A salt of arsenious acid.

*arsenious:* \* \* \* 2. *Chem.* Pertaining to, or containing, arsenic; — said of compounds in which arsenic is a trivalent.

*arsenious acid.* a. Properly, an acid, $H_3AsO_3$, known only in the form of its salts, the arsenites; also, the hypothetical acid $HAsO_2$, derived from the former, by loss of water, and distinguished as *metarsenious acid.* b. Arsenious oxide (an old name). — a. oxide, a white or transparent substance, $As_2O_3$ (or $As_4O_6$), having an astringent or sweetish taste, and strong poisonous properties; — called also *arsenic, white arsenic,* etc. \* \* \*

Counsel for the plaintiff then argues that:

However, the lexicographer says that arsenious acid is *"known only in the form of its salts."* Therefore, when Congress provided for "arsenious acid", it must have provided for that form of arsenious acid in which it is known—not some hypothetical commodity.

While it is true that "white arsenic" is the common name of arsenious *oxide,* it is important to note that an "oxide" is not an "acid", any more than a "salt" is an "acid."

Thus Congress has provided for "arsenious acid"—which is only known in the form of "salts" such as *arsenites,* and it has provided for "white arsenic" which is *arsenious oxide.*

Obviously, Congress was providing for two different commodities in the phrase "arsenious acid". Therefore the disjunctive "or" should be read as a conjunctive "and". In the construction of statutes, courts are often compelled to construe "or" as meaning "and", and again "and" as meaning "or". *United States* v. *Fisk,* 3 Wall. 445, 18 L. Ed. 243; *Forrest* v. *United States,* T. D. 47712.

As the only known forms of "arsenious acid" is that of its *salts,* Congress meant to provide for the salts. Otherwise the language would be meaningless.

Therefore, since sodium arsenite is a salt of arsenious acid, it is properly free of duty under paragraph 1614, Tariff Act of 1930.

The foregoing argument is quite persuasive and if standing alone without anything to the contrary to consider, might even be convincing, although in said argument a great deal has been presumed, or taken for granted, and the conclusion reached does not always follow the premise.

Moreover, the Government, in its brief filed herein, presents for our consideration quite different views based upon authorities which we consider equally as reliable and informative as Webster's Dictionary, regarding the Congressional intent, and certainly more likely to be followed by the Congress in expressing that intent.

Counsel for the defendant states the issue and its position as follows:

## THE ISSUE

Should the merchandise be classified as "Arsenious acid or white arsenic," under paragraph 1614, of the Tariff Act of 1930, or as a chemical compound, not specially provided for, under paragraph 5 of the same act.

## THE RECORD

No testimony was offered by the plaintiff to prove that the collector erred in his classification. However, it was stipulated that the merchandise in question consists of sodium arsenite (R. 2.)

## ARGUMENT

\*　　\*　　\*　　\*　　\*　　\*　　\*

It is the contention of the plaintiff that paragraph 1614 of the Tariff Act of 1930 should be interpreted as reading "arsenious acid *and* white arsenic." This contention is based on the argument supported only by dictionary definitions, that arsenious acid is known only by its salts, and that since sodium arsenite is a salt of arsenious acid, Congress must have intended sodium arsenite to be included in the free list. The implication from that argument is that white arsenic and arsenious acid are distinct and different chemical compounds. If, therefore, it can be demonstrated that the intent of Congress encompassed a synonymous use of these terms, then the contention of the plaintiff must fail, since admittedly white arsenic, known also as arsenic trioxide, differs materially from sodium arsenite, which is a salt of arsenious acid.

Counsel for the defendant, in his brief, then proceeds to a demonstration of the synonymous use in tariff language of the terms "arsenious acid" and "white arsenic," as follows:

Arsenious acid (white arsenic) has appeared in every tariff act since that of 1897. In order to avoid confusion between two apparently conflicting paragraphs of the Tariff Act of 1913, the United States Tariff Commission recommended a separate paragraph covering white arsenic and arsenious acid. In making that recommendation, the Commission explained at length, the sources from which arsenic was obtained, the uses to which it is put, and the distinctions between the various arsenical compounds, and the United States Tariff Commission, under Tariff Information Surveys on the Articles in Paragraphs 403, 404, 405, 406 407, and 408 of the Tariff Act of 1913, at page 9, stated:

White arsenic is the commonest form of arsenic in commerce. It is also known in the trade as "arsenic," arsenious acid (anhydride) or trioxide ($As_2O_3$). It is the source of most of the other arsenical compounds.　\*　\*　\*

The Tariff Act of 1922 embodied the recommendations of the Tariff Commission and included as paragraph 1513 "Arsenious acid or white arsenic," the identical predecessor to paragraph 1614 of the present tariff act. At no time in the interpretation of either of these two paragraphs have the two terms "arsenious acid" and "white arsenic" been considered otherwise than synonymously.

In the Summary of Tariff Information, 1929, Vol. 2, at p. 2197, paragraph 1513 of the act of 1922 receives the following treatment:

Par. 1513. Arsenious acid or white arsenic.

### ARSENIOUS ACID

(White arsenic)

Description and uses.—Arsenious acid, known as white arsenic or arsenic trioxide, is a fine, white, poisonous powder. It is one of the acid anhydrides, which have acid qualities when dissolved in water. Trade specifications require that the refined product contain 99 per cent or more of arsenic trioxide, but the grayish white crude contains only from 92 to 96 per cent arsenic trioxide.　\*　\*　\*

In its consideration of white arsenic and its continued inclusion in the free list in the present act, the Committee on Ways and Means of the 70th Congress, Second Session, heard the testimony of a commercial user of white arsenic, who in answer to a direct question on the matter informed the committee that white arsenic is the commercial name for arsenious acid, p. 1822 et seq., Vol. 15, Tariff Hearings, Committee on Ways and Means.

Apparently based upon the testimony of the witness before the Ways and Means Committee, counsel for the defendant proceeds, in his brief filed herein, as follows:

White arsenic is generally recognized to be the commercial name for arsenious acid, which is produced normally as a powder but assumes the quality of an acid when dissolved in water. In combination with sodium carbonate, the chemical sodium arsenite results.· That sodium arsenite is a chemical compound differing greatly from arsenic trioxide cannot, it seems, be seriously refuted. Thorp, "Outlines of Industrial Chemistry," pp. 269, 270. It, therefore, inevitably follows that sodum arsenite is a chemical compound, distinct and different from arsenious acid, a name commercially and generally used interchangeably with white arsenic and arsenic trioxide.

In the statement, last above quoted, counsel for the defendant has gone somewhat out of bounds. What counsel could properly have said as to what his demonstration showed· was that the Tariff Commission consistently used the terms "arsenious acid" and "white arsenic" synonymously and stated in its reports that they were so used in the trade, and that the testimony of one commercial user was to the effect that white arsenic is the commercial name for arsenious acid, which is something considerably short of counsel's statement that arsenious acid is a name generally and commercially known as white arsenic. However, what counsel's argument does demonstrate,.in our opinion, is sufficient to show that the intent of the Congress was to use the terms "arsenious acid" and "white arsenic" as synonymous terms and indicated such intent by using the disjunctive "or" instead of the conjunctive "and" in said paragraph 1614 of the present act.

The above views are in agreement with those expressed in the case of *Myers* v. *United States*, T. D. 43876, cited by counsel for the defendant in his brief filed herein, in which decision the terms "arsenious acid" and "white arsenic" are used synonymously. That decision was on a protest claiming free entry under paragraph 1513 of the act of 1922 (in language identical with that of paragraph 1614 of the present act) of an importation of flue dust containing 90 per centum of arsenic trioxide, the chemical name for white arsenic. The decision was rendered on February 24, 1930, and must be presumed to have been known to members of Congress at the date of the enactment of the act of 1930, which was adopted June 16, 1930.

From the foregoing does it follow that the imported merchandise, sodium arsenite, a salt of arsenious acid, is excluded from said paragraph 1614? The first quotation from defendant's brief, hereinbefore set out, clearly shows its contention that such result should follow.

However, upon consulting plaintiff's brief further we find that it is not by implication but by positive statement that plaintiff's counsel asserts that the language of said paragraph 1614 covers two different substances. This is stated in the following language:

> Thus Congress has provided for "arsenious acid"—which is only known in the form of "salts" such as the *arsenites* and it has provided for "white arsenic" which is *arsenious oxide*.

Furthermore counsel for the plaintiff backs up his positive assertion by his definitions from Webster's Dictionary, which defines arsenious acid as:

> *arsenious oxide* (an old name).—a. oxide, a white or transparent substance, $As_2O_3$ * * * called also *arsenic, white arsenic,* etc. * * *

Thus the court is presented with three substances, each differing from the other in chemical structure, namely, the parent substance, arsenious acid ($H_3AsO_3$) from which is derived one of its salts, sodium arsenite ($NaAsO_2$), which is the imported substance, and white arsenic ($As_2O_3$), which is specifically covered by said paragraph 1614, which term, it has been demonstrated, was by Congressional intent used synonymously with the term arsenious acid, the parent chemical compound.

Counsel, each having made good the particular point he considers decisive, have, nevertheless, failed to present to the court anything from which it may be determined with assurance whether it was the Congressional intent to include or exclude from paragraph 1614 the imported substance, sodium arsenite, shown to be different in chemical structure from white arsenic, which in turn has been demonstrated to be a term used synonymously with arsenious acid, which in turn has been shown to differ in chemical structure from both white arsenic and sodium arsenite, the latter a salt of arsenious acid, in which form alone arsenious acid is known, according to Webster's Dictionary.

Again adverting to the case of *Myers, supra,* in which it was sought to ascertain the Congressional intent as to the inclusion in paragraph 1513 of the act of 1922, identical with paragraph 1614 of the present act, of the flue dust there under consideration, we find the following reference to the Senate debate on the consideration of what finally became paragraph 1513 of the act of 1922:

> When the rates of duty were being fixed in the House of Representatives, a duty of 25 per centum ad valorem was placed upon arsenious acid or white arsenic, and when the Senate was considering the Tariff Act of 1922 that rate was changed to 2 cents per pound, but an amendment was offered, and Senator Smith of South Carolina, offering the amendment, gave his reasons therefor, which are in part as follows:

> I am not going to take the time of the Senate to argue all the reasons why this provision should be stricken out. I merely wish to state the main facts in reference to the matter.

White arsenic is the basis of what is known as calcium arsenate, which is used for the destruction of insects which prey upon the field and garden crops of this country, and the forests as well; on our fruits and vegetables as well as other growing crops, such as potatoes, tobacco, and latterly, the great cotton crop of this country.

\* \* \* \* \* \* \*

I think if the Senate wishes to go on record as lending whatever legitimate aid may be rendered by the Congress of the United States to the struggling farmers of the country, it should not only vote to place this article upon the free list but should use every method within its power to procure an adequate supply of this ingredient.

The Senator's amendment that arsenious acid or white arsenic should go on the free list was agreed to, and the House agreed to the amendment.

It is to be noted that Senator Smith, in presenting his views upon the subject to the Senate, mentioned only white arsenic, ignoring throughout his speech the term "arsenious acid," although he was speaking in support of his proposed amendment to strike the proposed duty of 2 cents per pound on the entire provision for arsenious acid or white arsenic, and it is clear that there was in the mind of the Senator but one substance, namely, "white arsenic," covered by the provision. That this reflected the intent of the Congress as a whole is borne out by an examination of the text of this provision in the bill as it passed the House of Representatives as H. R. 7456, wherein it appears as one of the provisions in paragraph 1 of title I of the dutiable list and reads as follows:

arsenic acid, arsenious acid or white arsenic, formic acid, gallic acid, oleic acid or red oil, oxalic acid, phosphoric acid, pyrogallic acid, stearic acid, and all other acids and acid anhydrides not specially provided for, 25 per centum ad valorem.

It is clear from the punctuation of the above that it was the intent to treat "arsenious acid or white arsenic" as covering one substance with two alternative designations, not two separate substances. And it is clear from Senator Smith's speech, that the one subject intended to be covered by his amendment was white arsenic. What is true of paragraph 1513 of the act of 1922 is equally true of paragraph 1614 of the act of 1930. From what has been said it will be seen that we have in the provision for "arsenious acid or white arsenic" but one substance, namely, white arsenic, which admittedly is not sodium arsenite, the imported merchandise, and which latter substance is not specially provided for in the act of 1930.

Since the collector classified the instant merchandise as chemical salts under paragraph 5, which classification is presumptively correct, and the plaintiff having failed to show by proper credible testimony or otherwise that such classification was erroneous and that any of the claims made are correct, we hereby overrule all the claims made by the plaintiff and affirm the classification of the collector. Judgment will be rendered accordingly.